UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| CHERRYL KIRILENKO-ISON, et al., | ) |
| Plaintiffs, | ) Civil Action No. 5: 18-435-DCR |
| V. | ) |
| BOARD OF EDUCATION OF DANVILLE INDEPENDENT SCHOOLS, | ) **MEMORANDUM OPINION AND ORDER** |
| Defendant. | ) |

**\*\*\*\*   \*\*\*\*   \*\*\*\*   \*\*\*\***

This conflict arises from disagreements over the care of two diabetic students in Danville Independent Schools between school nurses and the students' parents. Defendant Board of Education of Danville Independent Public Schools filed a motion for summary judgment regarding Plaintiffs Cherryl Kirilenko-Ison and Susan Bauder-Smith's retaliation, failure to accommodate, and whistleblower claims. [Record No. 30] For the reasons set forth below, the defendant's motion for summary judgment will be granted.

**I.**

Plaintiff Kirilenko-Ison is a registered nurse employed by the Danville Independent School District ("DISD") from January 2006 to 2017. [Record No. 30-2, pp. 21-22, 29] More specifically, she served as a registered nurse and as health services coordinator for DISD. [Record No. 30-2, pp. 21-22] Plaintiff Bauder-Smith was employed as a part-time school nurse. She was hired in 2014 under a grant for a limited term of service. [Record No. 30-3, pp. 26-28] Bauder-Smith's position was funded under a three-year PEP grant for physical and health education.

-1-

The claims asserted in this action involve the treatment of two students, D.M. and C.J., who suffer from type-1 diabetes. Kirilenko-Ison and Bauder-Smith assisted in the management and treatment of the students' diabetes. Additionally, they helped develop accommodation plans for the two students pursuant to § 504 of the Rehabilitation Act.

D.M. attended Bate Middle School during the time in question. The plaintiffs helped formulate and modify D.M.'s multiple § 504 plans. However, the plaintiffs disagreed with D.M's mother over the treatment and care of D.M. As a result, D.M.'s mother requested that the plaintiffs not care for D.M. in May 2016. [Record No. 30-19] The plaintiffs allege that D.M.'s mother was not bringing in the proper supplies and that the child was noncompliant with her treatment. The plaintiffs then filed a complaint with the Cabinet for Families and Children for suspected neglect or abuse by D.M's mother in May 2016. [Record No. 30-2, p. 62] The student's mother responded by submitting a complaint to DISD. Superintendent Keith Look was charged with investigating the mother's complaint. The defendant asserts that no disciplinary action was taken following this investigation. Kirilenko-Ison's annual contract was renewed for the upcoming school year and nothing changed with Bauder-Smith's contract.

C.J. attended Jennie Rogers Elementary School and had been diagnosed with type-1 diabetes at the start of the 2016-2017 school year. [Record No. 30-2, p. 54] The plaintiffs attended a meeting to develop a § 504 plan for C.J. in September 2016. [Record No. 30-2, p. 64] C.J.'s mother, T.J., provided an outline of the Diabetic Management Plan ("DMMP") that C.J.'s doctors created. His DMMP was adjusted several times by these doctors during the fall of 2016. The September 2016 § 504 plan and the DMMP permitted C.J. to have breakfast at school and did not restrict his ability to ride a school bus or require that he be escorted at all times. [Record No. 30-2, pp. 67-72; Record No. 30-8] However, Kirilenko-Ison and Bauder-

Smith were concerned with C.J. having breakfast at school due to the timing of meals and their concern over the implementation of a diabetic protocol. [Record No. 30-2, p. 56]

T.J. requested a meeting to revise C.J.'s § 504 plan in October 2016. The plaintiffs attended a meeting on October 14, 2016. During this meeting, they disagreed with T.J. over changes to the plan. [Record No. 30-2, p. 95] No plan was created at the meeting. [Record No. 30-2, p. 96]

T.J. later filed a complaint with the school regarding Kirilenko-Ison, alleging unprofessional conduct and violations of § 504, state statutes, and school policies. [Record No. 30-9] Another § 504 meeting was held on October 19, 2016, which the plaintiffs did not attend. During this meeting, a new § 504 plan was developed. [Record No. 30-2, p. 97; Record No. 30-12] Based on the foregoing actions, however, Bauder-Smith stated in December 2016 that she would no longer provide services to C.J. [Record No. 34-6]

David Davis and Edward McKinney were assigned to investigate T.J.'s complaint following the October 14, 2016 meeting. [Record No. 30-14] Kirilenko-Ison and her attorney met with Superintendent Look to discuss the findings of this investigation. [Record No. 30-14] Kirilenko-Ison was later suspended for five days without pay from February 9-15, 2017. [Record No. 30-14, p. 6] Thereafter, she took Family and Medical Leave Act ("FMLA") leave for the remainder of the school year.

Kirilenko-Ison provided a document to DISD on May 24, 2017, stating that she could return to her job with restrictions. [Record No. 30-15] The parties preliminarily entered into a contract of employment for the 2017-2018 school year. [Record No. 34-5] Kirilenko-Ison met with Superintendent Look to discuss her work restrictions and accommodations. Durign the meeting, the parties reviewed Kirilenko-Ison's duties and marked "ok" adjacent to the

identified tasks that she could perform. [Record No. 30-16] However, the defendant requested medical authorization for information on her accommodations. [Record No. 30-16, pp. 4-9] Kirilenko-Ison alleges that they requested a "blanket release" of all her medical records, to which she objected. [Record No. 30-2, p. 124-25] Kirilenko-Ison further asserts that Superintendent Look indicated that, if she did not sign the release of medical records, she would be terminated.

Kirilenko-Ison applied for disability retirement in August 2017 and resigned her position, effective August 1, 2017. [Record No. 30-2, pp. 41-42; Record No. 30-17] Bauder-Smith's contract ended on June 30, 2017. Although Bauder-Smith was offered a substitute nursing position in August 2017, she declined the offer. Bauder-Smith later applied for a full-time nursing position in November 2017, but she did not receive an interview after submitting the application.

The plaintiffs' Complaint asserts claims under § 504 of the Rehabilitation Act (Count I), Kentucky Revised Statutes ("KRS") §§ 344, *et seq*. (Count II), 42 U.S.C § 12203 (Count III), Failure to Accommodate (Count IV; Kirilenko-Ison only), and the Kentucky Whistleblower Act, KRS § 61.102 (Count V).

**II.**

Summary judgment is appropriate if there are no genuine disputes regarding any material facts and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). A dispute over a material fact is not "genuine" unless a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986). The determination must be "whether the evidence presents

a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52; *see Harrison v. Ash*, 539 F.3d 510, 516 (6th Cir. 2008).

Once the moving party has met its burden of production, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Keeneland Ass'n, Inc. v. Earnes,* 830 F. Supp. 974, 984 (E.D. Ky. 1993) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). The nonmoving party cannot rely on the assertions in its pleadings; rather, it must come forward with probative evidence to support its claims. *Celotex*, 477 U.S. at 324. In deciding whether to grant summary judgment, the Court views all the facts and inferences drawn from the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co.*, 475 U.S. at 58.

### III.

**Kirilenko-Ison has not provided sufficient evidence to support her claim that the defendant denied her reasonable accommodations or that she was constructively discharged.**

Under the Kentucky Civil Rights Act ("KCRA"), it is unlawful for an employer to "discharge any individual, or otherwise to discriminate against an individual with respect to compensation, terms, conditions, or privileges of employment . . . because the person is a qualified individual with a disability." KRS § 344.040(1)(a). The KCRA is interpreted consistent with the Americans with Disabilities Act ("ADA"). Therefore, KCRA cases can be analyzed by reference to the ADA. *See Brohm v. JH Props.*, 149 F.3d 517, 520-21 (6th Cir. 1998); *Howard Baer, Inc. v. Schave*, 127 S.W.3d 589, 592 (Ky. 2003); *Banks v. Bosch Rexroth Corp.*, 610 F. App'x 519, 526 (6th Cir. 2015).

"To recover on a claim of discrimination under the Act, a plaintiff must show that: 1) [s]he is an individual with a disability; 2) [s]he is 'otherwise qualified' to perform the job requirements, with or without reasonable accommodation; and 3) [s]he was discharged solely by reason of h[er] handicap." *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 201 (6th Cir. 2010); *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1178 (6th Cir. 1996). Discrimination can occur if an employer does not make "reasonable accommodations" for an employee's disability. *See* 42 U.S.C. § 12112(b)(5).

> In order to establish a prima facie case for failure to accommodate, a plaintiff must show that: (1) she is disabled within the meaning of the Act; (2) she is otherwise qualified for the position, with or without reasonable accommodation; (3) her employer knew or had reason to know about her disability; (4) she requested an accommodation; and (5) the employer failed to provide the necessary accommodation.

*Johnson v. Cleveland City Sch. Dist.*, 443 F. App'x 974, 982-83 (6th Cir. 2011).

"An individual is otherwise qualified, if he or she can perform the essential functions of the job with or without reasonable accommodation." *Keith v. County of Oakland*, 703 F.3d 918, 925 (6th Cir. 2013) (internal citations and quotations omitted). Essential job functions are "the fundamental job duties of the employment position the individual with a disability holds or desires." 29 C.F.R. § 1630.2(n)(1).

> i. Kirilenko-Ison failed to engage in the interactive process regarding her request for a reasonable accommodation concerning her disability.

Parties are required to engage in an interactive process to determine reasonable accommodations for an employee's disability. *Banks v. Bosch Rexroth Corp.*, 15 F. Supp. 3d 681, 690 (E.D. Ky. 2014), *aff'd, Banks*, 610 F. App'x at 534; 29 C.F.R. § 1630.2(o)(3). "The interactive process requires communication and good-faith exploration of possible

accommodations." *Id*. (citing *Barnett v. U.S. Air, Inc.,* 228 F.3d 1105, 1114 (9th Cir. 2000)). An interactive process "should identify the precise limitations resulting from the disability and potential reasonable accommodations that could overcome these limitations." 29 C.F.R. § 1630.2(o)(iii)(3). "An employer has sufficiently acted in good faith when it readily meets with the employee, discusses any reasonable accommodations, and suggests other possible positions for the plaintiff." *Jakubowski,* 627 F.3d at 203.

In *Harvey v. America's Collectibles Network, Inc*., the plaintiff alleged that the defendant failed to accommodate her request for accommodations and that she was forced to resign when the defendant asked her to provide medical documentation to support her request. No. 09-CV-523, 2011 U.S. Dist. LEXIS 5662, at *17 (E.D. Tenn. Jan. 20, 2011). The Court explained that "the defendant employer was entitled to specific updated medical information documenting the condition for which plaintiff sought an accommodation under the ADA." *Id*. at *21. The court concluded that, by not providing the requested medical information, the plaintiff did not participate in the interactive process in good faith and cannot claim that the defendant failed to accommodate her under the ADA. *Id*. at *22-23; *see also Williams v. Prison Health Servs., Inc*., 159 F. Supp. 2d 1301 (D. Kan. 2001).

Here, Kirilenko-Ison met with Look in July 2017 to discuss requested accommodations. [Record No. 30-2, p. 129] She requested that she be permitted to wear compression pants, that her room be adequately controlled for heat and air, and that she be allowed to have fluids and medication. Kirilenko-Ison also requested additional assistance for the large amount of work and extensions, if necessary, to submit internal paperwork. [Record No. 30-2, p. 131] She further requested to be able to elevate her legs and not stand or sit for long periods of time. [Record No. 30-2, p. 132] Kirilenko-Ison stated that these requests were neither approved nor

denied. [Record No. 30-2, p. 132] However, Kirilenko-Ison alleges that the Board asked her to sign a blanket medical release, but her contract did not require such a broad release of information. Instead, Kirilenko-Ison's contract provided that "[t]he District and the Employee also agree that this contract is contingent upon the completion of the forms titled 'Medical Inquiry Form in Response to an Accommodation Request' and 'Intent to Return and Fitness for Duty/Medical Release' by a medical provider…" [Record No. 34-5] The forms include a request for information relating to any alleged disability and the impact on the plaintiff's job. [Record No. 30-16, pp. 4-11]

Superintendent Look and Kirilenko-Ison met to discuss her duties and the potential assistance she might need. But when Look requested clarification and medical information in an effort to determine what accommodations may be necessary, Kirilenko-Ison refused to provide medical information that would assist in evaluating the accommodation request. *Jakubowski*, 627 F.3d at 202 ("Parties should not obstruct the process or refuse to participate."). Under these circumstances, the defendant was not obligated to provide an accommodation prior to receiving a proper diagnosis. *See Kennedy v. Superior Printing Co.,* 215 F.3d 650, 656 (6th Cir. 2000) ("An employer need not take the employee's word for it that the employee has an illness that may require special accommodation. Instead, the employer has the ability to confirm or disprove the employee's statement.") (internal citations and quotations omitted); *Kaltenberger v. Ohio College of Podiatric Med.*, 162 F.3d 432, 437 (6th Cir. 1998) ("The College was not obligated to provide accommodation until plaintiff had provided a proper diagnosis . . . and requested specific accommodation").

In short, the defendant did not fail to provide the requested accommodations.[1] The board had not yet determined whether the requested accommodation were reasonable because Kirilenko-Ison had not provided a proper diagnosis when the Board asked for relevant information. Kirilenko-Ison alleges that her disability is "autonomic nervous system dysfunction…lupus, Parkinsonism, POTS, and adjustment disorder with mixed emotion, and polyneuropathy." [Record No. 30-2, p. 124] However, she stated that she did not give a doctor's note to human resources or the superintendent setting forth her disabilities. Instead, she asserts that she explained how these conditions affected her and provided an accommodations request from her doctor. [Record No. 30-2, p. 124] Kirilenko-Ison further admits that she did not describe or list her diagnosis to the Board. [Record No. 30-2, p. 124] Instead, she simply provided a one-page note from her doctor listing potential accommodations. Kirilenko-Ison did not include any information about what her actual diagnosis. [Record No. 30-15] Kirilenko-Ison agreed that an employer has the right to confirm a disability diagnosis. [Record No. 30-2, p. 125] Similar to the *Harvey*, the plaintiff refusing to provide supporting medical documentation leads to this Court's conclusion that she did not engage in the interactive process in good faith and cannot bring a claim for failure to accommodate.

      ii.     Kirilenko-Ison was not constructively discharged.

Constructive discharge occurs when "working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to

---

[1] It is questionable whether Kirilenko-Ison has provided sufficient evidence to establish that she is disabled. However, the defendant has explicitly indicated that it does not argue, or concede, whether the plaintiff has a qualifying disability under the ADA. But even if Kirilenko-Ison does have a qualifying disability, she cannot succeed on a failure to accommodate claim.

resign." *Ford v. GMC*, 305 F.3d 545, 554 (6th Cir. 2004) (quoting *Yates v. Avco Corp.*, 819 F.3d 630, 636-37 (6th Cir. 1987)).

> Employee resignations and retirements are presumed to be voluntary. An apparently voluntary resignation does not rise to the level of constructive discharge unless it is objectively reasonable for the employee to leave under the circumstances. If an employee retires of his own free will, even though prompted to do so by some action of his employer, he is deemed to have relinquished his property interest in his continued employment for the government, and cannot contend that he was deprived of his due process rights.

*Nunn v. Lynch*, 113 F. App'x 55, 59 (6th Cir. 2004) (internal citations and quotations omitted).

Kirilenko-Ison alleges that she was constructively discharged because of the defendant's failure to accommodate her alleged disabilities. However, as noted above, she has not shown that the Board failed to provide her reasonable accommodations because she refused to provide confirmation and clarification about her conditions.

In *Harvey*, the court found that the plaintiff was not constructively discharged after an alleged failure to accommodate. 2011 U.S. Dist. LEXIS 5662 at *28-31. As explained above, the plaintiff in *Harvey* refused to provide medical documentation to support her requested accommodation. *Id*. at *28. The court stated that asking the plaintiff for her medical information "did not create an abusive atmosphere such that a reasonable person would be compelled to resign." *Id*. at *29. It concluded that it was not objectively reasonable for the plaintiff to leave her employment because the employer requested medical documentation to support a proposed accommodation, thus, she was not constructively discharged. *Id*. at *30. Further, without constructive discharge the plaintiff could not show an adverse employment action. *Id*. at *31.

Like the plaintiff in *Harvey*, it is unreasonable for Kirilenko-Ison to have ended the interactive process merely because her employer requested medical documentation to support

-10-

her disability claims and clarify reasonable accommodations. Kirilenko-Ison conceded that she had not disclosed her diagnosis and that it was within the employer's rights to clarify her illnesses. [Record No. 30-2, pp. 124-25] Accordingly, she has not presented sufficient evidence to demonstrate a constructive discharge.

**The plaintiffs have not produced sufficient evidence to demonstrate that the defendant retaliated against them in violation of Section 504 of the Rehabilitation Act, the ADA, or KRS § 344.280.**

The plaintiffs allege in Counts I-III that the defendant retaliated against them. Kentucky Revised Statutes § 344.280 makes it unlawful for two or more persons to conspire to retaliate or discriminate against a person for filing a complaint. The ADA and Section 504 prohibit retaliation against an individual for opposing acts or practices made unlawful by the Acts or for making a charge. *See, e.g.*, 42 U.S.C. § 12203; 28 C.F.R. 35.134; 29 U.S.C. § 794(a); 29 C.F.R. § 33.13.

The KCRA and the ADA are analogous and are interpreted consistently, so the plaintiff's claims under the ADA and KRS §§ 344, *et seq.*, can be analyzed together. *See Charalambakis v. Asbury Univ.*, 488 S.W.3d 568, 575 (Ky. 2016); *Neely v. Benchmark Family Servs.*, 640 F. App'x 429, 436 (6th Cir. 2016). Further, the ADA and Section 504 of the Rehabilitation Act contain similar anti-retaliation provisions and may be analyzed together. *A.C. v. Shelby County Bd. of Educ.*, 711 F.3d 687, 697 (6th Cir. 2013).

Claims of retaliation are analyzed either through direct evidence of retaliation or through circumstantial evidence under the burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To demonstrate a *prima facie* case of retaliation the plaintiffs must show: (1) they engaged in activity protected under Section 504, the ADA, and KRS § 344.280, (2) the Board knew of the protected activity, (3) the Board then took

adverse action against the plaintiffs, and (4) there was a causal connection between the protected activity and the adverse action. *A.C.*, 711 F.3d at 697. If the plaintiffs can establish a *prima facie* case of retaliation, the burden shifts to the defendant to demonstrate a legitimate, nondiscriminatory reason for the adverse employment action. *Id.* However, if the defendant establishes a legitimate, nondiscriminatory reason then the burden shifts back to the plaintiffs to show that the defendant's proffered reason is pretextual. *Id.*

The plaintiffs do not put forth any direct evidence of retaliation. Instead, they opt to assert claims under the *McDonell Douglas* framework. The plaintiffs contend that they were retaliated against after reporting D.M. to the Cabinet of Families and Children in May 2016 for suspecting that D.M. was an abused or neglected child, and after raising concerns about C.J.'s care. [*See, e.g.*, Record No. 30-2, p. 108-113.] Advocating for the rights of disabled students is a protected activity. *Reinhardt v. Albuquerque Pub. Sch. Bd. of Educ.*, 595 F.3d 1126, 1132 (10th Cir. 2010).

> i. Kirilenko-Ison has not shown that the reason for her five-day suspension was pretextual.

Kirilenko-Ison alleges that she was retaliated against because she was removed from providing care for the two children at issue, she was suspended for five days without pay after T.J. filed a complaint against her, she was denied accommodations under the ADA, and she was constructively discharged. [Record No. 30-2, pp. 24-27]

An adverse employment action is "a materially adverse change in the terms of one's employment." *White v. Burlington N. & Santa Fe. Ry. Co.*, 364 F.3d 789, 797 (6th Cir. 2004). Tangible employment actions constituting a material adverse change include "hiring, firing, failure to promote, reassignment with significantly different responsibilities, or a decision

causing a significant change in benefits." *Plautz v. Potter*, 156 F. App'x 812, 817 (6th Cir. 2005) (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761 (1998)). To constitute an adverse employment action, "a retaliatory action must be enough to dissuade a reasonable person from engaging in the protected activity; 'petty slights or minor annoyances' cannot qualify." *A.C.*, 711 F.3d at 698 (quoting *Burlington Northern & Santa Fe Ry. v. White*, 548 U.S. 53, 68 (2006)).

Kirilenko-Ison asserts that being removed from the care of C.J. and D.M. constituted an adverse employment action. However, "reassignments without salary or work hour changes do not ordinarily constitute adverse employment decisions in employment discrimination claims." *Koscis v. Multi-Care Mgmt.*, 97 F.3d 876 (6th Cir. 1996). Additionally, as noted above, Kirilenko-Ison was not denied accommodations or "constructively discharged." But being suspended for five days without pay constitutes an adverse employment action. The suspension occurred after T.J. filed a complaint about Kirilenko-Ison's actions regarding her child's diabetic management and the action was within few months of Kirilenko-Ison advocating for the child. This is sufficient to raise a causal connection between the protected activity and the adverse employment action. *See Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588 (6th Cir. 2009). As a result, Kirilenko-Ison has presented sufficient evidence to demonstrate a *prima facie* case of retaliation.

The burden shifts to the defendant to provide a legitimate, nondiscriminatory reason for the adverse employment action. Here, the defendant explains that Kirilenko-Ison was given a five-day suspension after a parent filed a complaint and following a full investigation of the complaint. This included speaking to the plaintiff and her attorney. [Record No. 30-14] Look concluded that Kirilenko-Ison put free appropriate education ("FAPE") into jeopardy, failed

to meet her obligations as described by the Kentucky Board of Nursing, failed to meet the New Code of Ethics for Nursing, and failed to meet the obligation for personal growth as it related to Type 1 diabetes. [Record No. 30-14, pp. 2-5] Look explained a five-day suspension was warranted because Kirilenko-Ison refused to treat the subject child, refused to believe that the child was entitled to breakfast, believed that chocolate was a fast-acting carbohydrate, and for believing that the family was wrong to think that C.J. should be able function like any other child in the district. [Record No. 33-1, p. 76] She was then suspended for five days without pay. [Record No. 30-14] This is sufficient to meet the defendant's burden. Thus, the burden shifts back to the plaintiff to prove pretext.

Kirilenko-Ison can show pretext if the reason provided: (1) lacks a basis in fact; (2) did not actually motivate the suspension; or (3) was insufficient to motivate the suspension. *A.C.*, 711 F.3d at 702. However, the plaintiff has not come forward with any evidence to show that her five-day suspension was pretextual. Kirilenko-Ison merely makes a conclusory allegation that she was subject to a "sham investigation." She has not identified any evidence indicating that the defendant's proffered reasons lacked a basis in fact, that the reasons did not actually motivate her suspension, or that the reasons provided were insufficient to motivate her suspension.

Here, T.J. filed a complaint against Kirilenko-Ison, two individuals were assigned to do a fact-finding investigation, and following the investigation Look met with Kirilenko-Ison and her attorney to discuss the findings. Further, he conducted independent research to look into her claims. Thereafter, he provided a 7-page letter detailing the reasons for her five-day suspension. She was suspended four months after the complaint was made by T.J. Accordingly, Kirilenko-Ison has not produced sufficient evidence for a reasonable jury to infer

that the defendant's nondiscriminatory reason was pretextual. Thus, her claims for retaliation will be dismissed.

> ii. Bauder-Smith has not shown a causal connection between advocating for C.J. and D.M. and her alleged non-hiring.

Bauder-Smith contends that she attempted to advocate for and protect C.J. and D.M. [Record No. 30-3, pp. 39-40] She asserts that she and Kirilenko-Ison opposed the Board of Education's orders to follow the mother's directives for C.J.'s care. [Record No. 30-3, p. 42] Bauder-Smith also claims that the defendant retaliated against the plaintiffs as a result of their opposition to the Board's orders. [Record No. 30-3, p. 44] She also contends that she was retaliated against because one of the student's mother came to the school, claiming that "someone had to pay." [Record No. 30-3, p. 46] Additionally Bauder-Smith claims that she was not interviewed for an open position after her original term of service ended. [Record No. 30-3, p. 46]

"A causal connection is established when a plaintiff proffers 'evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action.'" *Fuhr v. Hazel Park Sch. Dist.*, 710 F.3d 668, 675 (6th Cir. 2013). Temporal proximity is an important consideration in determining if there is a causal connection, and "a lack of temporal proximity alone can be fatal to an attempt to establish a causal connection." *Id*. (referencing *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273-74 (2001) (a 20-month gap suggested no causality)).

Here, even if Bauder-Smith not being interviewed for an open position is an adverse employment action, she cannot demonstrate a causal connection between the protected activity and the alleged adverse employment action. Bauder-Smith's employment expired at the end

of July 2017, when a grant for the position expired. [Record No. 30-3, p. 84] Her alleged protected activities took place from May to December 2016 and she asserts that she was retaliated against by not being hired in November 2017. The complaint against D.M.'s mother occurred in May 2016. However, between the alleged protected activities, she declined an offer of temporary employment with Danville Independent Schools. [Record No. 30-3, p. 92-93]

There was an 11-month gap between the alleged activities and intervening actions by the Board, which cuts against a causal connection. Bauder-Smith has not put forth any evidence demonstrating a causal connection that advocating for C.J. and D.M.'s care and filing a complaint in 2016 were the likely reasons for not being interviewed in November 2017. Accordingly, Bauder-Smith's claim of retaliation fails.

**The plaintiffs' Whistleblower claims cannot survive summary judgment.**

Kentucky Revised Statutes §§ 61.102*, et seq.*, protects "employees who possess knowledge of wrongdoing that is concealed or not publicly known, and who step forward to help uncover and disclose that information." *Harper v. Univ. of Louisville*, 559 S.W.3d 796, 801 (Ky. 2018) (quoting *Davidson v. Commonwealth Dep't of Military Affairs*, 152 S.W.3d 247, 255 (Ky. App. 2004)). Such acts of wrongdoing include "actual or suspected mismanagement, waste, fraud, abuse of authority, or a substantial and specific danger to public health or safety." KRS § 51.102(1).

The Whistleblower Act "prohibits employers from subjecting public employees to reprisal for reporting information relating to the *employer's* violation of the law, alleged fraud, or abuse, etc." *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 428 (Ky. 2005) (emphasis added); *see also Petrilli v. Silberman*, No. 2009-CA-001925-MR, 2011 Ky.

App. Unpub. LEXIS 192, at *28-31 (Ky. Ct. App. Mar. 11, 2011) (holding the plaintiff had not met the first element of the statute because the employee reported a violation by a parent, not by the employer); *Boone v. Kentucky*, No. 11-075, 2012 U.S. Dist. LEXIS 59782, at *4-*5 (E.D. Ky. Apr. 30, 2012).

In the present case, the complaint made by the plaintiffs was the report of D.M.'s mother to the Cabinet of the Family and Health Services for suspected abuse and neglect in May 2016. [Record No. 30-2, p. 144] This action did not concern the employer's actions, but the actions of the student's parents. Accordingly, the defendant is entitled to summary judgment on this claim.

### IV.

Based on the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendant Board of Education of Danville Independent Schools' Motion for Summary Judgment [Record No. 30] is **GRANTED**.

2. Plaintiffs Cherryl Kirilenko-Ison's and Susan Bauder-Smith's claims are **DISMISSED**, with prejudice.

3. The trial of this action, previously scheduled to begin on Tuesday, August 6, 2019, is **CANCELED**.

Dated: July 12, 2019.



Signed By:
*Danny C. Reeves*
United States District Judge