UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | |
|---|---|
| CHERRYL KIRILENKO-ISON, et al., ) | |
| ) | |
| Plaintiffs, ) | Civil Action No. 5: 18-435-DCR |
| ) | |
| V. ) | |
| ) | |
| BOARD OF EDUCATION OF ) | **MEMORANDUM OPINION** |
| DANVILLE INDEPENDENT ) | **AND ORDER** |
| SCHOOLS, ) | |
| ) | |
| Defendant. ) | |

*** *** *** ***

The parties' pre-trial motions are pending for consideration. The plaintiffs filed a motion to exclude one of the defendants' witnesses, Eva Stone, at least as far as she is designated by the defendants to testify as an expert witness. [Record No. 76] The plaintiffs' motion will be granted because the defendant did not provide sufficient information for Stone to testify as an expert witness. Next, the defendant seeks to exclude certain claims by the plaintiffs related to damages. [Record No. 67] That motion also will be granted for the reasons explained below.

### I.  Relevant Factual and Procedural Background[1]

Plaintiffs Cherryl Kirilenko-Ison and Susan Bauder-Smith initiated this action in Boyle Circuit Court on June 1, 2018. [Record No. 1-2] They sought damages for alleged violations of various state and federal statutes by their former employer, the Board of Education of

---

[1] At this late stage, the facts giving rise to this action have been recounted by the parties and the Court. The Court repeats here only what is necessary to resolve the current motions.

-1-

Danville Independent Schools ("the Board"). [*Id.*] The plaintiffs were employed as nurses in the educational facilities operated by the Board. [Record No. 43, p. 1] The allegations in the Complaint arose out of the plaintiffs' advocacy on behalf of two disabled students, as well as Kirilenko-Ison's own disabilities. [*See* Record No. 1-2.]

The Complaint asserted three causes of action. First, the plaintiffs claimed to have suffered retaliation in violation of: § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 701, *et seq.* (Count I); Kentucky Revised Statutes ("KRS") § 334.280 (Count II); and the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12.203 (Count III) (collectively, "the retaliation claims"). Second, Kirilenko-Ison alleged that the defendant failed to accommodate her disability in violation of the ADA and KRS § 344.040 (Count IV). Third, the plaintiffs alleged that the Board violated the Kentucky Whistleblower Act, KRS § 61.102.

Eventually, the Board moved for summary judgment. The Court granted summary judgment on the failure-to-accommodate and whistleblower claims. [Record No. 43, pp. 6-11, 16-18] On Kirilenko-Ison's accommodation claim, the Court determined that she had failed to provide the Board with "any information" about an actual medical diagnosis supporting her alleged disabilities and, therefore, her claim failed. [*Id.* a p. 9] Because the Board did not fail to accommodate her disability, it also did not constructively discharge her as a matter of law. [*Id.* at pp. 9-11] Further, the whistleblower claim failed because the plaintiffs had not reported any information regarding their *employer's* violations of law. [*Id.* at p. 16 (citing *Cabinet for Families & Children v. Cummings*, 163 S.W.3d 425, 428 (Ky. 2005))] The plaintiffs had only made allegations against private individuals (a child's parents) and, therefore, the whistleblower claim could not succeed.

The Court also granted summary judgment on the retaliation claims. Specifically, the undersigned concluded that Bauder-Smith had failed to establish a causal connection between her protected activities (i.e., advocacy in "May to December 2016") and the adverse employment action taken against her (i.e., the Board's failure to re-hire her in November 2017). [Record No. 43, p. 16] For her part, Kirilenko-Ison had demonstrated a causal connection between her advocacy and an adverse employment action because she was suspended for five days without pay soon after an investigation into her advocacy on behalf of a student. [*Id.* at p. 13] However, the Court concluded that she had failed to demonstrate that the Board's reason for the suspension was pretextual, as opposed to motivated by a legitimate and nondiscriminatory purpose. [*Id.* at pp. 14-15] Thus, summary judgment was granted in the Board' favor.

The plaintiffs timely appealed, and the Sixth Circuit Court of Appeals affirmed the Court's decision regarding the whistleblower, failure-to-accommodate, and constructive discharge allegations. [Record No. 49-1] However, it reversed this Court's conclusions as to the retaliation claims. More specifically, it found that Bauder-Smith had demonstrated a factual dispute over whether a causal connection existed between her advocacy and the Board's failure to rehire her. [Record No. 49-1, pp. 16-17] Similarly, it found that a factual dispute remained over whether the Board's explanation for its suspension of Kirilenko-Ison was a mere pretext for discrimination. [*Id.* at pp. 19-20] Thus, the action was remanded for further proceedings.

As mentioned previously, the parties have filed two pre-trial motions. The defendant filed a motion seeking *in limine* exclusion of certain evidence concerning the plaintiffs' damages. [Record No. 67] The Board argues that any evidence related to the plaintiffs'

"preexisting *physical* medical conditions" are unrelated to this action and are inadmissible. [*Id.* at p. 2 (emphasis in original)] It also contends that Kirilenko-Ison is barred from seeking (and presenting evidence related to) damages for lost future income because she was not constructively discharged. [*Id.* at pp. 2-3] Finally, the Board argues that Kirilenko-Ison should be barred from recovering economic damages associated with her five-day suspension because she was eventually compensated for the time off. [*Id.* at pp. 3-4] The plaintiffs filed a motion to strike Eva Stone, a witness listed by both parties, to the extent that the Board intends to call her as an expert witness.[2] [Record Nos. 76, 77]

## II. Legal Analysis

A federal court's power to issue *in limine* rulings is part of its "inherent authority to manage the course of trials before it." *Deere & Co. v. FIMCO Inc.*, 260 F. Supp. 3d 830, 834 (W.D. Ky. 2017) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). The power is discretionary, and it is used to exclude only evidence that is "clearly inadmissible on all potential grounds." *Gresh v. Waste Servs. of Am., Inc.*, 738 F. Supp. 2d 702, 706 (E.D. Ky. 2010) (citation omitted). In that same spirit, blanket exclusions of "broad categories of evidence should rarely be employed." *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975). Instead, the "better practice" is to consider the admissibility of individual pieces of evidence in the "proper context" of trial. *Id.*; *Indiana Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004). Importantly, however, evidence that survives a motion *in limine* may ultimately be excluded at trial, and a court has the power to

---

[2] The plaintiffs' motion originally sought to strike both Stone and Dr. Timothy Allen. [Record No. 76] The motion to strike Allen was withdrawn when plaintiffs' counsel discovered that Allen's expert report had, in fact, been disclosed. [Record No. 76] The plaintiffs continue to object to Stone's potential expert testimony. [*Id.*]

reconsider its *in limine* rulings at any time. *See United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994).

      A.      **The Board's Motion *In Limine***

The defendant seeks to exclude allegedly irrelevant evidence. Under Federal Rule of Evidence 401, evidence is relevant if it has any tendency to make a fact of consequence more or less probable than it would be without the evidence. Fed. R. Evid. 401(a)-(b). It follows that "[r]elevancy is an extremely broad concept." *Hinkle v. Ford Motor Co.*, 2012 WL 4049477, at *1 (E.D. Ky. Sept. 13, 2012). However, irrelevant evidence is not admissible. Fed. R. Evid. 402.

The defendant contends that any evidence of the plaintiffs' physical injuries[3] is plainly irrelevant. [Record No. 67, p. 2] It argues that damages for physical injuries are not recoverable for retaliation, and it notes that the plaintiffs failed to plead such damages in their Complaint. [*Id.*] The plaintiffs' response does little to quarrel with these points. In fact, they assert that they are seeking "compensatory damages as well as damages for emotional distress." [Record No. 75, p. 2] Nowhere do the plaintiffs state an intention to seek damages for physical injuries. The defendant construes this as a concession that the plaintiffs do not intend to seek damages for any physical injuries. [Record No. 81, p. 2]

The Court agrees that there would be no basis for allowing the plaintiffs to introduce evidence of physical maladies because they are unrelated to their remaining claims. It also

---

[3]    The Court uses the term "plaintiffs" here because it is unclear whether the defendant's argument is restricted to one plaintiff. The defendant notes that its argument is "particularly" in reference to Plaintiff "Kirilenko-Smith['s]" physical conditions. [Record No. 67, p. 2] But no party to this action is named Kirilenko-Smith. Nevertheless, whether the argument is intended to be limited to one plaintiff does not affect the Court's relevancy analysis.

appears that the plaintiffs conceded that the evidence is inadmissible based on their characterization of the damages recoverable in this matter. Additionally, to the extent Kirilenko-Ison intends to introduce evidence of the physical conditions that formed the basis of her accommodation request, that evidence is similarly irrelevant. The failure-to-accommodate claim has been dismissed, and the Board was not required to accommodate her as a matter of law. Evidence that she suffered from prior medical conditions has no tendency to make it more or less likely that the Board suspended her because of her advocacy on behalf of the children. Therefore, the Board's request to exclude evidence of the plaintiffs' physical injuries will be granted.

Next, the defendant seeks to clarify that the only evidence of an adverse employment action Plaintiff Kirilenko-Ison may present to the jury is the fact that she was suspended for five days without pay. [Record No. 67, pp. 2-3] Further, they contend that she should be barred from seeking lost wages for the suspension because she was eventually provided back-pay for the absence. [*Id.* at pp. 3-4] They note that this Court found that Kirilenko-Ison voluntarily resigned her position, and that the holding was affirmed on appeal. [*Id.* at pp. 2-3] And they reproduce a portion of her deposition where she indicated that she was "returned [her] salary that was garnished for [her] disciplinary action[,] [s]o there's no past salary missing." [*Id.* at p. 3]

The plaintiffs' response concedes that no constructive discharge theory will be argued to the jury. [Record No. 75, p. 3] But they argue that Kirilenko-Ison must be able to "present proof that [she] suffered an adverse action after advocating for the children." [*Id.*] The implication of this argument is that absent the ability to introduce evidence that Kirilenko-Ison's suspension was *without pay*, she will be unable to prove that she suffered an adverse

employment action. *But see White v. Burlington N. & Santa Fe R. Co.*, 364 F.3d 789, 800 (6th Cir. 2004) (suspension without pay followed by reinstatement with back pay was an adverse employment action), *aff'd sub nom. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).

However, the defendant has not moved to exclude the fact that the suspension was without pay—it merely seeks to prevent Kirilenko-Ison from *recovering damages* for that period of unpaid leave. [*See* Record No, 81, p. 2 (stating that Kirilenko-Ison "HAS NO CLAIM FOR DAMAGES RELATED TO LOST INCOME ASSOCIATED WITH HER 5-DAY SUSPENSION").] The plaintiff acknowledges that she "ultimately received" backpay after she appealed the suspension decision. [Record No. 75, p. 3] And she testified that she has no outstanding lost wages as a result of the suspension. [Record No. 67, p. 3]; *see Virostek v. Liberty Twp. Police Dep't/Trustees*, 14 F. App'x 493, 505 (6th Cir. 2001) (finding no adverse employment action because, among other reasons, plaintiff testified that she had not "suffered any loss as a result" of a suspension). Therefore, Kirilenko-Ison will be precluded from seeking lost wages related to her five-day suspension. The fact that her suspension was unpaid is admissible to prove that she suffered an adverse employment action.

   **B.**  **The Plaintiffs' Motion to Strike**

The plaintiffs seek to exclude Stone from testifying as an expert in this matter. [Record No. 76] The defendant's witness list identifies Stone as follows:

> Eva Stone, MSN, APRN[.] Ms. Stone was referred to Dr. Look[, former Superintendent of Danville Independent Schools,] by the Kentucky Board of Nursing during the events which are the subject matter of this litigation and is expected to testify regarding her knowledge of the events and knowledge and experience and/or expertise regarding school nursing and diabetes care. Ms. Stone's [curriculum vitae] was produced to Plaintiffs.

[Record No. 63, ¶ 13] The Board's motion for summary judgment mentioned that Dr. Look met with Stone prior to making the decision to impose Kirilenko-Ison's suspension. [Record No. 30-1, p. 6] More specifically, Look testified that he "discussed with [Stone] hypothetical situations related to diabetic care of students within schools." [Record No. 33-1, p. 70] He made clear that he did not discuss the details of the complaint that triggered his investigation, the student's medical diagnoses, or the care rendered by Kirilenko-Ison—he merely asked "questions" about "specifically what expectations" the Board should have for its caregivers. [*Id.* at pp. 70-71] Based on Stone's responses, Look determined how to proceed with the investigation into Kirilenko-Ison.

The plaintiffs argue that the defendant's description of Stone's expected testimony indicates that she is a witness who must provide a report pursuant to Federal Rule of Civil Procedure 26(a)(2). [Record No. 76, p. 1] And the plaintiffs contend that no such report has been produced, thereby depriving them of an opportunity to rebut Stone's proposed expert testimony. [*Id.* at p. 2] The defendant contends that Stone is not retained as an expert witness in this matter, but was merely "identified to testify regarding her knowledge of the events"—*i.e.*, her consultations with Dr. Look. [Record No. 78, p. 1] The Board also notes that the plaintiffs have identified Stone as a fact witness. [*Id.* at p. 2] The plaintiffs' witness list states that Stone will be called to "testify to her conversation with Dr. Look" and "her understanding about the diabetic protocol and interaction with" the plaintiffs. [Record No. 68, p. 4]

The plaintiffs concede in their reply that Stone is not a *retained* expert whose identification must be accompanied by a written report. [Record No. 80, p. 1]; Fed. R. Civ. P. 26(a)(2)(B). Rather, they contend that she was required to provide a "written report" in compliance with Rule 26(a)(2)(C), which concerns witness that may be called to provide

expert testimony because of their factual relation to the case, but who are not specifically retained for that purpose. [*Id.* at pp. 1-2]

Rule 26(a)(2)(C) does not require a "written report" as contemplated by the Federal Rules. However, it requires a party to disclose the "subject matter on which the witness is expected to present" expert testimony, and a "summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(i)-(ii). The commentary to the 2010 Amendments to Rule 26, which added subsection (2)(C), states that "[t]his disclosure is considerably less extensive than the report required by Rule 26(a)(2)(B)," and it cautions courts to "take care against requiring undue detail, keeping in mind that these witnesses have not been specially retained and may not be as responsive to counsel as those who have."

Nevertheless, the plaintiffs argue that the defendant's disclosure did not meet this lower standard. They cite *Little Hocking Water Association, Inc. v. E.I. DuPont de Nemours & Co.*, a Southern District of Ohio case that "boil[ed] down to the degree of detail required of the disclosures relating to non-specially retained experts." 2015 WL 1105840, at *5 (S.D. Ohio Mar. 11, 2015). There, the court concluded that disclosures of non-retained experts, "which merely state[d] the topics of the opinions to which the expert w[ould] testify, without stating any view or judgment on such topics[,] . . . do not satisfy (a)(2)(C)." *Id.* at *6. The plaintiffs argue that the defendant has failed to do more than merely state the topics upon which Stone may testify, leaving them "to only speculate [about] what Stone's opinion will be." [Record No. 80, p. 2]

The case cited by the plaintiffs is persuasive. The defendant has identified Stone as a witness that may provide expert testimony regarding "school nursing and diabetes care." [Record No. 63, ¶ 13] Like the disclosures in *Little Hocking Water Association*, this disclosure

"may meet the 'subject matter' prong-(a)(2)(C)(i)-but does not satisfy the separate summary of opinion prong-(a)(2)(C)(ii)." 2015 WL 1105840, at *6. Further, even under the "less stringent standard laid out in Rule 26(a) (2)(C)," the undersigned has required parties to disclose at least their "expect[ations]" regarding a proposed witness's expert testimony. *See Smith v. Windstream Commc'ns, Inc.*, 2013 WL 12177457, at *3 (E.D. Ky. Sept. 12, 2013). In short, the defendants have failed to provide a summary of the opinions to which Stone is expected to testify, and she will be precluded from offering her expert opinions at trial.

Based on the foregoing analysis and discussion, it is hereby

**ORDERED** as follows:

1. The defendant's motion *in limine* to exclude certain arguments related to the plaintiffs' damages [Record No. 67] is **GRANTED**.

2. The plaintiffs' motion to strike Eva Stone as an expert witness [Record No. 76] is **GRANTED**.

Dated: June 10, 2021.

Danny C. Reeves, Chief Judge
United States District Court
Eastern District of Kentucky